**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION**

| | |
|---|---|
| Progressive Northern Insurance Company, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 5:19-cv-02002-JMC |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Paulette Jackson; Anthony Fogle; Jonathan ) | |
| Lee; John Doe, a minor; David Wesley Ryant ) | |
| II; Trequan Tyreke Stokes; and the Estate of ) | |
| Raquan Middleton, ) | |
| Defendants. ) | |
| ) | |

This matter is before the court pursuant to Plaintiff Progressive Northern Insurance Company's ("Plaintiff") Motion for Default Judgment and Declaratory Judgment as to all Defendants (ECF No. 23). Plaintiff filed this Motion on February 19, 2020, against Defendants Paulette Jackson ("Jackson"), Anthony Fogle ("Fogle"), Jonathan Lee ("Lee"), David Wesley Ryant, II ("Ryant"),[1] Trequan Tyreke Stokes ("Stokes"), and the Estate of Raquan Middleton ("Middleton's Estate") (collectively, "Defendants").[2] (*Id.*) It seeks an entry of default judgment against Defendants as well as a declaratory judgment that it has no duty to indemnify Defendants. (*Id.*)

### I.  JURISDICTION

Diversity jurisdiction exists in this case. Plaintiff and Defendants are completely diverse for purposes of 28 U.S.C. § 1332. Plaintiff is "organized and existing pursuant to the laws of the State of Wisconsin, with its principal place of business in the State of Ohio" while Defendants are

---

[1] The court observes that Plaintiff misidentified Ryant in the caption as "David Wesley Ryant, II." (ECF No. 23 at 1 n.2.) Ryant's actual name is "Daniel Wesley Ryant, II." (*Id.*) The court acknowledges that Ryant corrected this error upon service on October 2, 2019. (ECF No. 11-1.) The clerk of court is directed to change the caption of the case to reflect the correction of this Defendant's name.

[2] Plaintiff previously filed a notice of dismissal of all claims without prejudice against Defendant John Doe, a minor. (ECF No. 16.)

1

believed to be citizens and residents of South Carolina. (*Id.* at 1-2 ¶¶ 1-8.) In addition, Plaintiff claims that the amount in controversy exceeds $75,000.00. (*See* ECF No. 1 at 2 ¶ 10.)

## II.     FACTUAL AND PROCEDURAL HISTORY

Plaintiff previously issued a personal auto insurance policy to Jackson with effective dates of October 5, 2018 to April 5, 2019 (policy number 924916731) (hereafter, "Previous Policy"). (ECF No. 1 at 2-3 ¶ 12.) The Previous Policy listed Lee as a "driver and resident relative" upon belief that he is Jackson's son but was canceled on January 2, 2019 for nonpayment of premiums. (*Id.* at 3 ¶¶ 13, 14.)

Plaintiff subsequently issued another personal auto insurance policy to Jackson with effective dates of January 31, 2019 to July 31, 2019 (policy number 927146962) (hereafter, "Current Policy"). (*Id.* ¶ 15.) The Current Policy insured a 2013 Hyundai Sonata and a 2005 Ford Focus and named Fogle, but not Lee, as a "driver and resident relative." (*Id.* ¶¶ 15, 17.) The policy had liability limits of "$25,000.00/person and $50,000.00/accident for bodily injury and $25,000.00/accident for property damage." (*Id.* ¶ 16.)

On February 24, 2019, Lee drove the 2013 Hyundai Sonata listed as an insured vehicle on the Current Policy to a Cookout restaurant in Orangeburg, South Carolina with John Doe as a passenger. (*Id.* at 5 ¶ 20.) While Lee and Doe were sitting in the Cookout parking lot in the parked Sonata, a 2000 Mercedes, driven by Ryant and carrying Stokes and Raquan Middleton ("Middleton") as passengers, entered the parking lot. (*Id.* ¶ 21.) Stokes and Middleton then exited the car, walked up to the Sonata with handguns, and began firing bullets at Lee and Doe. (*Id.* at 6 ¶ 22.) Lee and/or Doe returned fire. (*Id.* ¶ 23.) During the altercation, Middleton was mortally injured, Doe was shot, and bullet holes pierced the exterior of the Sonata. (*Id.* ¶¶ 24-26.) Ryant and/or Stokes and/or Middleton later drove to Jackson's home and shot bullets into the house,

2

striking her in the leg. (*Id.* ¶¶ 27, 28.) Based on these events, Plaintiff believed Defendants would make claims under the Current Policy. (*Id.* ¶ 29.)

Plaintiff filed a Complaint on July 17, 2019, seeking a declaratory judgment delineating the rights of the parties under the Current Policy. (ECF No. 1.) On October 2, 2019, Plaintiff served Stokes while he was imprisoned at the Orangeburg County Jail, but he failed to answer or otherwise appear in the case. (*See* ECF Nos. 15-1, 23 at 2.) Plaintiff also served Ryant via personal service on October 2, 2019. (ECF No. 11-1.) Ryant's attorney originally indicated that he would represent Ryant in the action but Ryant has not answered, entered a notice of appearance, or requested an extension to answer. (ECF No. 23 at 2-3.)

Unable to serve Jackson, Fogle, Lee, or Middleton's Estate after due diligence, Plaintiff moved to serve them by publication on October 23, 2019. (ECF No. 9.) The court granted Plaintiff's Motion for Service by Publication (ECF No. 9) on October 24, 2019 and ordered Plaintiff to attempt to serve Jackson, Fogle, Lee, and Middleton's Estate by publication pursuant to S.C. Code Ann. § 15-9-710 (2019) and Federal Rule of Civil Procedure 4(e)(1). (ECF No. 10.) When each of the Defendants failed to answer or appear in the action, the clerk entered an Entry of Default against all Defendants (ECF No. 21) on January 13, 2020 upon Plaintiff's motion (ECF No. 19).

Plaintiff now asserts that a default judgment should be entered against Defendants under Federal Rule of Civil Procedure 55(b) because each Defendant has failed to answer the Summons (ECF No. 4) and Complaint (ECF No. 1). (ECF No. 23 at 3.) It also asks the court to declare that the Current Policy does not provide coverage for the February 24, 2019 incidents because: (1) Jackson made multiple material misrepresentations when she applied for the Current Policy; (2) the alleged injuries and damages sustained did not arise out of the ownership, maintenance, or use

3

of a motor vehicle; and (3) the injuries and damages arose out of the intentional and/or criminal acts of some of the Defendants. (*Id.* at 9.)

### III.     LEGAL STANDARD

Federal courts are courts of limited jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Standing and ripeness are jurisdictional issues that courts must consider on their own initiative. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-31 (1990); *National Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). Standing requires a plaintiff to allege a concrete injury that is "actual or imminent, not 'conjectural' or 'hypothetical[.]'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1990) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Ripeness determines when a case or controversy is fit for federal judicial review. *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967).

Even when standing and subject matter jurisdiction exist, a court has discretion to decide whether to exercise jurisdiction in declaratory judgment actions.

> Under the Declaratory Judgment Act, a district court, in "a case of actual controversy within its jurisdiction . . . *may declare* the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). This Act gives federal courts discretion to decide whether to declare the rights of litigants . . . Rather than grant litigants a right to judgment in their case, it merely permits the courts to hear those cases.

*Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 201 (4th Cir. 2019) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995)). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288. When an ongoing proceeding in state court overlaps with a federal declaratory judgment action, courts must particularly consider whether "federalism, efficiency, and comity" counsel against exercising

4

jurisdiction. *Trustgard*, 942 F.3d at 202. In making this determination, courts look to (1) the state's interest in having its own courts decide the issue; (2) the state courts' ability to resolve the issues more efficiently than the federal courts; (3) the potential for unnecessary entanglement between the state and federal courts based on overlapping issues of fact or law; and (4) whether the federal action is mere forum-shopping. *Id.*

Securing a default judgment is a two-step process. A plaintiff must first file a motion requesting an entry of default from the court clerk upon a defendant's failure to plead or otherwise defend within the permissible period for response. Fed. R. Civ. P. 55(a). If a plaintiff's claim is not for a certain sum, a plaintiff must then "apply to the court for a default judgment." Fed. R. Civ. P. 55(b). Rule 55(b)(2) gives the court great discretion in determining whether to enter default judgment. *Peppers-Jeridore v. T. Bayou, LLC*, No. 2:19-cv-1104-DCN, 2020 WL 85223, at *2 (D.S.C. Jan. 7, 2020) (citing *United States v. Ragin*, No. 94-1970, 1997 WL 268576, at *2 (4th Cir. May 21, 1997)). When considering a motion for default judgment, the court may hold hearings to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

In considering a plaintiff's application for default judgment, a court accepts a plaintiff's well-pleaded factual allegations as true. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). However, the defendant is not deemed to have admitted conclusions of law and the entry of default is not treated as an absolute confession by the defendant of his liability and the plaintiff's right to recover. *Id*. Rather, in determining whether to enter judgment on the default, the court must determine whether the well-pleaded allegations in the complaint support the relief sought. *Id.* Therefore, a court considering default judgment must determine if the established

factual allegations constitute a legitimate cause of action and provide a sufficient basis for the relief sought. *Id.*

## IV.     ANALYSIS

The court declines to reach the merits of Plaintiff's arguments and concludes that it must *sua sponte* dismiss the entire action based on the Fourth Circuit's decision in *Trustgard*. In *Trustgard*, an insurer sought a declaratory judgment delineating its duty to indemnify. 942 F.3d at 197. The Fourth Circuit vacated the district court's declaratory judgment, finding that the district court abused its discretion when it assumed jurisdiction under the Declaratory Judgment Act. *Id.* It concluded that considerations of comity and judicial efficiency weighed strongly in favor of permitting the state court to address the relationship among the various parties. *Id.* at 204. The Fourth Circuit emphasized that the declaratory judgment precluded a state court from considering certain issues, required a federal court to extensively analyze state law, and resulted in duplicative discovery. *Id.* at 202-04.

The Fourth Circuit also questioned the existence of Article III jurisdiction. *Id.* at 204. First, it doubted that the insurer plaintiff had standing. *Id.* at 200. The Fourth Circuit characterized the insurer's alleged injury as potentially "guarantee[ing] a future judgment" against the insured and described it as "hypothetical and contingent" because the injury may or may not occur depending on the outcome of the state lawsuit. *Id.* Second, it considered the suit unripe for adjudication. *Id.* Since the state court had not determined the insured defendant's liability, a federal suit adjudicating the insurer plaintiff's duty to indemnify would be advisory. *Id.* As a result, the Fourth Circuit advised that "courts should exercise their discretionary jurisdiction with caution when doing so would raise serious questions about Article III jurisdiction[.]" *Id.* at 202.

6

As in *Trustgard*, considerations of comity and judicial efficiency counsel against exercising jurisdiction in this case. Here, the scope and meaning of the uninsured motorist coverage in the Current Policy is an unresolved question since it is not clear whether injuries suffered during a drive by shooting "arise out of" the operation of a vehicle under South Carolina law. *See Silva for Estate of Silva v. Allstate Prop. & Cas. Ins. Co.*, 818 S.E.2d 753, 754 (S.C. 2018). Therefore, a declaratory judgment would require this court to decide issues that South Carolina courts have a strong interest in deciding themselves. Like the declaratory judgment at issue in *Trustgard*, a declaratory judgment in this case could also result in undesirable preclusion, extensive federal interpretation of state law, and duplicative litigation.

Finally, it is uncertain whether this court would have Article III jurisdiction if it decided to exercise jurisdiction. Plaintiff may not have alleged a sufficiently concrete injury to have standing. *See Lujan*, 504 U.S. at 560. In this case, Plaintiff alleges the same injury as the insurer plaintiff in *Trustgard* – that it may need to indemnify insureds in the future. Therefore, Plaintiff's injury may be too "hypothetical and contingent in nature" to establish standing. *Trustgard*, 942 F.3d at 200. Moreover, Plaintiff's claim may be unripe for adjudication. Under *Trustgard*, judgment on the duty to indemnify prior to the resolution of an insured's liability is premature and potentially advisory. *Id.* at 199-200.

Since a declaratory judgment would interfere with ongoing state proceedings and create a substantial question about the existence of Article III jurisdiction, the court declines to exercise its discretion under the Declaratory Judgment Act to hear this case. Therefore, the court **DISMISSES** this matter.

V. **CONCLUSION**

For the foregoing reasons, the court *sua sponte* **DISMISSES** Plaintiff's Complaint (ECF No. 1) **WITHOUT PREJUDICE** and **DENIES AS MOOT** its Motion for Default Judgment and Declaratory Judgment (ECF No. 23).

**IT IS SO ORDERED.**

United States District Judge

August 20, 2020
Columbia, South Carolina